**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Dagy Group Incorporated, et al.,

                    Petitioners,

      v.

Darewin Chip Incorporated, et al.,

                  Respondents.

No. MC-19-00003-PHX-GMS

**ORDER**

Pending before the Court is the Motion to Quash Subpoenas of Respondents Cheng Xia and Darewin Chip, Inc. (Doc. 9.) For the following reasons the motion is denied.

## BACKGROUND

Petitioners in this action are Dagy Group, Inc., Advanced Optronic Devices Co., and Huichang Jiang. Jiang incorporated Dagy Group in Texas in 2000 and now holds approximately 20% of its stock. In 2004, Dagy Group incorporated Advanced Optronic, a wholly-foreign-owned entity organized under the laws of the People's Republic of China. Dagy Group is the sole shareholder of Advanced Optronic.

Respondent Darewin Chip, Inc. ("DCI") is an Arizona corporation. Respondent Cheng Xia is a shareholder in DCI as well as its CEO. Xia's husband, Xiqing Sun, is a shareholder in and director of DCI. He is also the former chairman of Advanced Optronic.

This civil action arises out of a criminal proceeding in the People's Republic of China against Sun. Sun is accused of fraudulently filing value-added-tax special invoices and embezzling funds from Advanced Optronic. During his first trial, Sun was convicted

on the tax fraud charges and acquitted on the embezzlement charges.  But the case was then reversed and remanded for a new trial by the appellate court.  Sun's second trial lasted more than a year, and the case was submitted to the court in April 2019.  Before judgment issued in the second trial, however, the prosecution moved to have the charges withdrawn so further investigation could be conducted in the case by law enforcement.

On April 9, 2019, this Court granted Petitioners' Ex Parte Application for Discovery pursuant to 28 U.S.C. § 1782.  (*See* Doc. 2.)  Petitioners served four subpoenas on Respondents on April 15, 2019.  The subpoenas were directed at Cheng Xia and DCI.  Two subpoenas directed the production of documents by Xia and DCI, and two subpoenas directed Xia and DCI to appear at depositions.  Xia is the only officer of DCI and the company has no employees.

Respondents now move to quash the subpoenas, offering three principle reasons for doing so: (1) the discovery sought is not actually sought for use in a "proceeding in a foreign or international tribunal" as required under § 1782; (2) the subpoenas are "procedurally defective" because a treaty between the United States and China provides the approved avenues for discovery like that sought here; and (3) the subpoenas would violate the spousal testimonial privilege because Xia is married to Sun.

## DISCUSSION

### I.    Legal Standards

Subpoenas are governed in the federal courts by Federal Rule of Civil Procedure 45.  If a party served with a subpoena makes a "timely motion," a court "must quash or modify a subpoena that" (1) does not allow reasonable time for compliance, (2) requires a person to comply beyond certain geographical limits, (3) would cause the disclosure of "privilege or other protected matter", or (4) "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).

### II.    Analysis

Petitioners at the outset contend that the Motion to Quash was not timely filed because it was filed the day that compliance was required for the two subpoenas duces

tecum—May 3, 2019.  However, as discussed below, even if the Motion to Quash was timely filed, Respondents have failed to demonstrate that the subpoenas should be quashed. The Court therefore does not address the timeliness arguments.

### A.   Ground One

Respondents first argue that it is unclear whether law enforcement is still conducting a criminal investigation regarding Sun's alleged crimes.  Under Chinese criminal procedure, prosecutors can withdraw criminal charges and refer the case back to law enforcement for further investigation and can apparently do so up until the moment a court renders its decision.  However, the prosecutor can only recommend further investigation.

The Supreme Court has held that § 1782 authorizes discovery so long as "a dispositive ruling" from a judicial body is "within reasonable contemplation."  *See Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004) ("[W]e hold that § 1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European Courts, be within reasonable contemplation.").  The letter submitted by Petitioners from the Chinese prosecutors suggests that law enforcement is likely to continue the investigation.  (*See* Doc. 15 at 4.)[1]  Thus a dispositive ruling is within "reasonable contemplation."

### B.   Ground Two

Respondents next contend that the subpoenas should be quashed because a treaty precludes Petitioners' use of § 1782 to obtain discovery.  An agreement between the United States and Chinese governments outlines certain procedures for the provision of mutual legal assistance between the two nations.  *See* Agreement Between the Government of the United States of America and the People's Republic of China on Mutual Legal Assistance in Criminal Matters, United States–P.R.C., June 19, 2000, *available at*

---

[1] Respondents contend that the letter submitted by Petitioners, which are apparently from the Weifang Hi-Tech Industrial Development Zone People's Procuratorate, is not what Petitioners claim it is.  But Petitioners have submitted an additional letter (the "Clarification Letter") from the same source vouching for the authenticity of the previous letters.  And this time, Petitioners have included a Notarial Certificate which states that the Clarification Letter is authentic.  (Doc. 17 at 19.)  Since the Clarification Letter is thus authenticated, the Court does not credit Respondents' attacks on the authenticity of the previous letters.

https://www.state.gov/13102, ("Mutual Legal Assistance Treaty" or "MLAT").  But the terms of the MLAT itself demonstrate that private parties cannot use the agreement to obtain evidence.  *See* MLAT, art. I ¶ 3 ("The provisions of this Agreement shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.").

Respondents counter that Petitioners' application is a "de facto effort by Chinese prosecutors to obtain evidence" through means outside of the MLAT.  But that Chinese prosecutors may use evidence obtained by Petitioners does not somehow convert Petitioners' application into an official request from the Chinese government that would be subject to the MLAT's requirements.  Despite Respondents' attempts to reframe Petitioners' application, the MLAT only binds the parties to the agreement: the governments of the United States and the People's Republic of China.  *See id.* ("This Agreement is intended solely for mutual legal assistance between the Parties."); *id.* preamble ("The Government of the United States of America and the Government of the People's Republic of China, hereinafter referred to as 'the Parties'"); *see also United States v. Chitron Electronics Co. Ltd.*, 668 F. Supp. 2d. 298, 306 (D. Mass. 2009) ("[T]he MLAT only becomes operative if a request is made by the United States to China for assistance . . . . Moreover, the MLAT does not create a private right of enforcement of the treaty."). The MLAT does not preclude Petitioners' use of § 1782 to obtain discovery.

## C.    Ground Three

Lastly, Respondents contend that the spousal testimonial privilege would be violated by forcing Xia to give deposition testimony that could be used against her husband, Sun.  Under Federal Rule of Evidence 501, the privilege of a witness is governed by the common law as interpreted by the United States Courts "in the light of reason and experience," except as otherwise required by the Constitution, federal statute, or Supreme Court rule.  Fed. R. Evid. 501; *United States v. Fomichev*, 899 F.3d 766, 771 (9th Cir. 2018).  Two types of privileges can arise from the marital relationship: the spousal testimonial privilege and the marital communications privilege.  *Id.*   The spousal

1   testimonial privilege "allows a spouse to refuse to testify adversely to his or her spouse."

2   *United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir. 2006) (citing *Trammel*, 445 U.S. at

3   53).

4       The Supreme Court has stated that "[t]estimonial exclusionary rules and privileges

5   contravene the fundamental principle that 'the public has a right to every man's evidence.'"

6   *Trammel v. United States*, 445 U.S. 40, 50 (1980) (alteration omitted) (quoting *United*

7   *States v. Bryan*, 339 U.S. 323, 331 (1950)).   Privileges therefore "must be strictly

8   construed."  *Id.*  The spousal testimonial privilege may be invoked only by the testifying

9   spouse.   *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004) (citing

10  *Trammel*, 445 U.S. at 53).  Further, the privilege is not a general one, and should be asserted

11  to particular questions—"blanket assertions of the privilege are not favored." *United States*

12  *v. Van Cauwenberghe*, 827 F.2d 424, 431 (9th Cir. 1987).

13      While this proceeding is a civil proceeding arising under 28 U.S.C. § 1782, the

14  evidence sought here is for use in a criminal proceeding: Sun's criminal investigation and

15  trial in China.  The privilege—were it to be invoked—would not be invoked for purposes

16  of this proceeding, but rather for that criminal proceeding.  Xia may be able to appropriately

17  invoke the privilege "to refuse to testify adversely to . . . her spouse."  *Griffin*, 440 F.3d at

18  1143.  Additionally, the spousal testimonial privilege would not apply to the two subpoenas

19  duces tecum.  *See In re Grand Jury Subpoena, Dated March 21, 2018*, 747 Fed. App'x 575

20  (Mem.) (9th Cir. 2018).[2]

21      Because it is not clear at this point that all questions that may be asked of Xia during

22  the depositions would violate the spousal testimonial privilege, and because the privilege

23  is to be strictly construed, it would not be appropriate to quash the deposition subpoenas at

24  this time. Rather, during the deposition, Xia may assert the privilege to the extent that any

---

[2] "Here, 'the testimonial aspect of Doe's response to a subpoena duces tecum does nothing more than establish the existence, authenticity, and custody' of any responsive [document]. Because this bare testimonial aspect of Doe's act of production does not itself adversely affect her husband's case, Doe is not relieved of her obligation to produce foreign bank account records over which she has care, custody, or control." *In re Grand Jury Subpoena*, 747 Fed App'x at 576 (alterations and citations omitted) (citing *United States v. Hubbell*, 530 U.S. 27, 40–41 (2000)).

answers to questions would violate it.

The Court emphasizes to the parties the standards that govern the privilege—particularly the principle that the privilege can be invoked only if the testimony sought would actually be adverse to the interests of the other spouse.  Xia's counsel should not, at the depositions, make a blanket assertion of the privilege.  Rather, each question should be examined in context of the underlying investigation against Sun to determine whether a particular question would require Xia to give testimony adverse to his interests.

Because a blanket assertion of the spousal testimonial privilege, without the context of the questions being asked, is inappropriate here, the Court need not quash the deposition subpoenas under Rule 45.

**CONCLUSION**

Respondents have failed to show that the subpoenas should be quashed under Rule 45.  **IT IS THEREFORE ORDERED** that the Motion to Quash Subpoenas Respondents Cheng Xia and Darewin Chip, Inc. (Doc. 9) is **DENIED**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action.

Dated this 19th day of July, 2019.

G. Murray Snow
Chief United States District Judge